TATE *v.* JOHNSON.

F. P. TATE ET AL. v. ABE JOHNSON ET AL.

(Filed 30 May, 1908.)

1. **Deeds and Conveyances—Boundaries—Description—Stake.**

A stake is not a natural boundary in the description of a conveyance of land.

2. **Deeds and Conveyances—Boundaries—Evidence.**

When a call in a deed is for a line running at a certain distance from an ascertained corner to a stake, and the further description of the line is not met, the stake and distance do not control, as a matter of law, when it appears that a survey had been caused to be made of this and an adjoining tract on the same day by the owner of both tracts, including the dividing line in dispute, and this dividing line is identical as to calls, courses and distances in both deeds under which the parties claim. Under such circumstances it is for the jury to find the true location of the disputed line.

3. **Same—Instructions.**

When the boundary line between two lots of land lying east and west of each other is in dispute, and the owner had a plat of them made on the same day, in which the western one was numbered "one" and the eastern one numbered "two," and a subsequent conveyance was made by him of yet another lot, the deed to which was put in evidence for the purpose of establishing the southeast corner of lot numbered one, described as "lying south of the first, beginning at a yew pine, southeast corner of said survey, running west with said line 90 chains to a stake," it was error in the court to charge the jury in effect that the third lot lay south of the first and establish the corner thereof at a certain place at which there was no yew pine, it further appearing that by running the distance of 90 chains from the southeast corner of lot No. 2 it would include its southern boundary and fit in with the further calls in the deed.

**4. Deeds and Conveyances—Adverse Possession—Color—Instructions—Descriptions.**

> When, for the purpose of establishing a dividing line between adjoining owners of land derived from a common source holding a grant from the State, a deed is introduced to show title to the disputed land under "color" and adverse possession, with full description, it was error in the court below to instruct the jury that the description in the deed must be followed, when the deed recites that the tracts were those originally granted by the State to the common grantor. 1. It was competent for the jury to have the description in the grant to aid them in locating the corners and lines of the deeds. 2. If there was a discrepancy upon the evidence the jury should reconcile it, or they may find the more reliable description to be in the grants. 3. If upon the whole evidence the descriptions of the deeds are found to be irreconcilable with those of the grants, those in the deeds would control.

ACTION tried before *Peebles, J.,* and a jury, at September Term, 1907, of McDOWELL.

Plaintiffs appealed.

*S. J. Ervin* and *Avery & Avery* for plaintiffs.
*Pless & Winborne* for defendants.

CONNOR, J.   Plaintiffs sue for trespass upon certain lands, a description of which is fully set forth in the record.   The merits of the controversy depend very largely upon locating the several tracts as described in the original grants from the State to Waitstill Avery.   The plat accompanying the statement of the case shows the contentions of the parties.   For the purpose of showing title the plaintiffs introduced certain grants to Avery, bearing date 9 November, 1784, based upon surveys made 18 June, 1783.   It is conceded that the beginning of lot No. 1 is at A.   The next call is 5 chains to the creek, crossing the same course 45 chains to a chestnut on the Rich Mountain, B.   (This line must be extended 4¾ chains to reach B.)   The next call is 60 chains E., crossing a branch to a stake in Laurel Swamp.   The distance in this call gives out at red *f,* which defendants insist is the southeast corner. Plaintiffs insist that this line should be extended 4 chains to

TATE *v.* JOHNSON.

C.   The reason upon which this contention is based appears by reference to the next call, "north 32 chains, crossing the

river, the same course 18 chains to a Spanish oak," D; thence to the beginning.

Plaintiffs next introduced a grant to Avery, surveyed 18 June, 1783, dated 9 November, 1784.    This grant calls for the beginning at a Spanish oak, the northeast corner of the first tract, running south 18 chains to the river, crossing same course 32 chains to a stake, C; thence east.    The controversy in regard to the location of the first tract centers upon the eastern terminus of the second line.    Defendants insist that it should be controlled by course and distance, stopping at red *f* and following the dotted line to *y*.    Plaintiffs contend that, disregarding distance, it should be extended 4 chains to C.    In support of this contention they call attention to the fact that a line running north from red *f* will not cross the creek 32 chains from the river or 18 chains from it either to the Spanish oak or *y*.    They also call attention to the call of grant No. 2, 150 acres, for which the survey was made for Mr. Avery on the same day, which calls for a Spanish oak, the northeast corner of the first tract, and describes the line as running S. 18 chains and crossing the creek in the same course 32 chains to a stake.

T. L. Bandy swore that he surveyed lot No. 2, and says that in running the line he began at A and ran east to D, and found an old marked line from A to D.    The distance gave out 16 poles west of D, which is an old field cleared up.    He located D by starting at a branch just east of D called for in the 150-acre tract (No. 4).    From D he ran a line south 18 chains and got to the old channel of Toe River, where Toe River formerly ran.    This old channel is marked red on the map and is north of where the river now runs.    From this red channel to D is just 18 chains, and he then ran the same course south of the channel 32 chains, being 50 chains south of D.    Plaintiffs insist that this, with other evidence, tended to show that the east line of lot No. 1 is the same as the west line of lot No. 2; that by locating the line of lot No. 2 at D, south 18 chains to river and 32 chains to C, the jury should have located the southeast corner of lot No. 1 at C.

thus corresponding in the call from that point 32 chains to the river and same course 18 chains to the Spanish oak, D. There was evidence of marked trees more or less conflicting along the lines. His Honor submitted, upon this phase of the controversy, the issue, "Is the southeast corner of lot No. 1 at C or at red *f*?" Plaintiffs submitted "contentions" in regard to the issue covering some twelve pages. It is impracticable to analyze them or to separate the "contentions" from prayers for instructions. Among other instructions given the jury upon the third issue is the following: "When you start from B you run east, then go 60 chains to a stake in a laurel swamp; that stake is not a natural boundary, and, there being no natural boundary, it is your duty to stop at the end of the 60 chains. If you find it to be a fact that to start from B and run east 60 chains will bring you to red *f*, it is the third call in the 300-acre tract. If you believe that there is no Spanish oak, and that due north 50 chains will take you to *y*, then it is your duty to go to *y* and say that *y* is the northeast corner of the 300-acre tract." The plaintiffs excepted to each of these instructions. The beginning point of lot No. 1, 300 acres, being admitted, there is no controversy that B is the next corner. This being so, his Honor rejected all evidence tending to show that the second corner could be extended beyond the distance called for, and located the lines as a matter of law. He withdrew from the jury the right to consider the evidence relied upon by plaintiffs to locate the southeast corner at C. The court applied the rule that, in the absence of natural objects or other well-known lines, course and distance will control in the location of a tract of land. There can be no controversy in regard to the rule. The question which frequently arises and gives trouble is what other objects or conditions will be permitted to be considered by the jury to vary the call for course and distance. It is true that a stake is not a natural boundary, and, unless we find something in the evidence more reliable, his Honor

correctly instructed the jury. It is evident that Mr. Avery
had two tracts of land surveyed on the same day, and that
they adjoined; that the east line of one tract was the west
line of the other. If, by locating No. 2, the west line is
fixed, and there is a controversy in regard to the east line of
No. 1, why may the jury not consider the line of No. 2 to aid
them in finding the true location of the disputed line? It is
clear that, if the call for the second line of lot No. 1 had
been east 60 chains to the corner of lot No. 2, the call for the
corner would control the distance. Is it not practically this
case? Lot No. 2 calls as the beginning "a Spanish oak, the
northeast corner of the first tract." This being located, it is
perfectly clear, if the evidence is true, that the call from this
northeast corner south is the same line as the third call in the
first tract. Therefore it is beyond controversy that, having
located one line, the other is also located. The surveyor de-
scribes how he located the first call in lot No. 2 at D. If
this is correct, the next inquiry arises, How will the next
line be located? He says that a line south from D 18 chains
reaches the old channel of the creek, and that this line, con-
tinued 32 chains, stops at C. This is in the course of the
second line of lot No. 1 due east from B. He says that, if
you stop at red $f$, the next call cannot be met; that a line
north will not cross the creek 32 chains from red $f$ and 18
chains north of the creek, but that, if the second line be con-
tinued to C, the next call corresponds with the first call in lot
No. 2. It appears to us that, if the testimony is true, the
jury would find no difficulty in locating the dividing line
between the two tracts at C. It will be noted that in reach-
ing the chestnut at B from A it was necessary to disregard
the distance, extending the line 4¾ chains. Unless this is
done, the east line of lot No. 1 would never reach $f$ or C, nor
would the next call reach $y$, but would run 4¾ chains north
of it and never reach A, the conceded beginning corner.
There is other testimony bearing upon the question which,

together with that which we have discussed, should have been submitted to the jury under proper instruction. Of course, if the jury do not find that D is the northeast corner of lot No. 1, and, therefore, lot No. 2 is not located, they would be compelled to fall back upon the call for distance and locate the southeast corner at *f*. There does not appear to be any controversy in regard to the proper location of lot No. 2. The exception is sustained.

Plaintiffs introduced a grant for lot No. 3, surveyed for Mr. Avery 6 June, 1795, "lying south of the *first,* beginning on a yew pine, the southeast corner of *said survey,* running west with said line 90 chains to a stake in his other line; thence south 21 chains and 12 links to a stake; thence east 20 chains to a maple tree, marked W. A.; thence north 21 chains and 12 links to the beginning." His Honor submitted an issue to the jury: "Is the beginning corner of lot No. 3, the 190-acre tract, at red *f* or at black E?" Plaintiffs contend that the call for the beginning point is at E, the word "first" referring to lot No. 2. Defendants contend that the call is at red *f,* the southeast corner of lot No. 1, to which they claim the word "first" refers. So far as that phase of the question is concerned, the two surveys being made on the same day for the same person, there is an ambiguity in the word "first" as applying to "said survey." The grants were issued on the same day, 9 November, 1784. Plaintiffs insist that, as Avery owned both tracts at the time of the survey, the beginning of the 190-acre tract should be located at E. His Honor charged the jury that "This third tract lies south of the *first tract*—that is, lies south of tract No. 1, or the 300-acre tract—and is the 190-acre tract." To this instruction plaintiffs excepted. The plaintiffs insist that the question of location was for the jury, and that his Honor committed error in telling them that the 190-acre tract lay south of the 300-acre tract, as a matter of law. Of course, if as a matter of law the tract lay south of the 300-acre tract, there was nothing

148—18

left to the jury, in the light of the instruction that the south-east corner was at red *f*. The surveyor says that, if you start from red *f* or C and run the next call west 90 chains, you will pass beyond Avery's line, thus disregarding the call for a stake in his *other* line, and that the land would be on both sides of Rich Mountain and include the mountain; whereas, if you start at E and run 90 chains west, you will stop "in his other line," as called for in the grant. It will be observed that the call for a yew pine does not correspond with the call for either *f* or C, which is a stake. We think that the location of the first call in the 190-acre tract should have been submitted to the jury. There was much conflicting evidence in regard to marked trees, declarations of deceased persons, etc. It will be observed that the call for the "S. E. corner of his first tract" is followed by a call "west 90 chains to a stake in his other line." It was permissible for the jury to find in these words some evidence that by the "first" tract was meant the 150-acre tract, the southeast corner of which was at E and "his other tract," the 300-acre tract. In this way the words "lying south of the first" tract may be reconciled with the calls in regard to distance, and the words "south of the first," southeast corner of "said survey" and "running west 90 chains to a stake in his other line" are all given force and effect. It is certainly a legitimate argument to be made to the jury, supported by more than a scintilla of evidence, and, if satisfactory to their minds, sufficient to sustain a verdict. We do not think that his Honor could say as a matter of law that the 190-acre tract lay "south of the 300-acre tract," thus excluding all evidence or inference tending to locate the beginning corner at E.

Plaintiffs introduced a bond for title made by R. M. Pearson (1876), obligating himself to convey to the parties named "the old fields of Toe." They then introduced a deed from Richmond Pearson conveying by way of execution of the bond of his testator the land described as "the old fields of

Toe," bounded as follows (a full description of each tract is attached), and in conclusion: "These seven tracts were originally granted by the State of North Carolina to Waitstill Avery and conveyed by Isaac T. Avery to Robert Hamilton, October 30, 1834, and by James Hamilton to W. F. McKesson, November 3, 1856; mortgaged by McKesson to R. M. Pearson February 5, 1867, which mortgage was foreclosed *by said Pearson,* and said Pearson became the purchaser."

Other deeds connecting plaintiffs with the title were introduced.

His Honor, being of the opinion that the plaintiffs did not connect themselves with the title acquired by Avery by the grants, said to the jury: "The plaintiffs do not claim under these grants; so that, when you go to ascertain where the lines are that the plaintiffs claim, that deed (Pearson's deed) must be your guide. Whenever the calls in the deed differ from the calls in the grants, you must follow the Richmond Pearson deed, because that is the color of title under which the plaintiffs claim title to this land." Plaintiffs excepted.

We think that there was error calculated to prejudice the plaintiffs in this instruction. While it is true that plaintiffs do not connect themselves with Avery's title, and their title is based upon an ouster followed by seven years' possession under color, yet the deed from Richmond Pearson expressly refers to the Avery grants and says that he is conveying the same land. It was therefore competent for the jury to look to the description in these grants for the purpose of locating the corners and lines. If there was a discrepancy between them and Pearson's deed, the jury may upon the entire evidence have reconciled it or found that the more reliable description was to be found in the grants. Of course, if upon the whole evidence they found the particular description in the Pearson deed to be irreconcilable with the grants, that would control in fixing the boundary controlling the extent of the possession.

In this record we find sixteen issues, twenty-four assignments of error and twelve pages of "contentions," which his Honor was asked to submit to the jury. The pivotal questions as to boundary were included in two issues, and his Honor practically instructed the jury how to answer them. Of course, there were other questions regarding possession, etc. The map filed with the record is not marked or the corners numbered, as the map referred to by the witnesses. If we have, after most anxious consideration, failed to grasp all of the "points," we will not be surprised. Summons was issued several years ago. We cannot but think that a reference to an intelligent surveyor, a lawyer and a layman of the same standard would have settled it within a short time. This, of course, is merely suggestive. Learned and experienced counsel have conducted the litigation and doubtless understand the case better than we do.

For the errors pointed out, there must be a
New Trial.